Nancy Oakes de Marigny, Plaintiff, *v.* Alfred F. de Marigny, Defendant.

Supreme Court, Trial Term, New York County, October 4, 1949.

*Sol A. Rosenblatt* for plaintiff.

*Hirsch, Shalleck, Krakower & Gelwan* for defendant.

STEUER, J. In this action to annul a marriage a preliminary question of jurisdiction has been raised. There is further controversy as to whether a decision rendered on this question on a motion to vacate service constitutes the law of the case. This latter question need not be decided because on the additional evidence adduced on the trial the conclusion reached is the same as that previously rendered. It is found that the plaintiff resides here and has the requisite intent to constitute New York her domicile.

The ground for annulment is that at the time of the marriage the defendant was married to another woman. Concededly there was a decree of divorce issued in the State of Florida which purported to terminate that earlier marriage. The proof was conclusive that, although both parties appeared in that action, the testimony of the plaintiff wife therein as to residence was false and that the jurisdictional requirements for a divorce in Florida were not established and were in fact nonexistent.

It is claimed that plaintiff may not question the validity of the Florida divorce because of the appearance of both of the parties to it. There are several recent decisions which involve this question directly or indirectly. These decisions, unfortunately, lack unanimity and it is deemed more serviceable to clarify the steps by which the conclusion here is reached than to dissect these determinations and then bestow on one line of them the doubtful accolade of the " better reasoned view ".

A foreign judgment of divorce was at one time required to be given recognition and effect if either both parties appeared in the action or, if one party only appeared, the jurisdictional requirements were met, the marital domicile was established in the State in which the proceedings were had, and service in accordance with the laws of that State was effected. The recitals in the judgment as to jurisdictional facts in regard to the plaintiff could not be questioned. In two important respects this has been changed. The law now is that if the jurisdictional requirements of the granting State are met and service is made in accord with the laws of that State the judgment is unquestionable but the recitals in the judgment as to residence or domicile of the plaintiff may be questioned.

But a party who has appeared in the action may not question them. This is not because the appearance *ipso facto* established the validity of the recitals but because the appearance gave each party the opportunity to raise the question of their validity and his failure to do so raises an irrebutable presumption against him in their favor.

A third person, not a party to a judgment, is never bound by a recital in a judgment unless he derives his rights from a party; or acted in the premises with knowledge of the recital; or if the judgment is in rem. In the latter case he may still question the jurisdiction of the court over the *res*.

A judgment of divorce is one quasi in rem. The *res* is the marital status. Jurisdiction over the *res* is obtained, as seen, not by jurisdiction over both parties but by the presence of at least one party who has met the jurisdictional requirements of the granting State. The appearance of both parties does not give jurisdiction but a disability of either party to question the facts upon which jurisdiction rests.

It follows that plaintiff, a third party, may question the recitals and as they are indisputably false unless there is some bar she is entitled to a finding that defendant's divorce is invalid and her marriage to him should be annulled.

Before going into what might constitute a bar the decision of the Appellate Division (275 App. Div. 757) on an appeal from an order concerning the pleadings must be considered. It was therein determined that the face of the pleadings did not reveal the facts necessary to decide whether or not plaintiff might attack the Florida divorce. It was also stated that the extent to which plaintiff's rights were invaded and whether the interest of this State was sufficiently aroused were factors which could only be determined after the full disclosure of the facts obtainable at a trial.

It must be admitted that the foregoing analysis is not influenced by either of those factors. A proper respect requires a showing that they were not ignored. As far as can be seen no rights of the plaintiff that she had prior to her marriage to defendant were invaded. The only conceivable right that could then be affected was her right to rely on the apparent validity of the proceedings. There is no proof of what she relied on if in fact she relied on anything. Assuming that she had a right to an unquestionable status, as she is the only person who can raise any question in regard to the divorce no right is invaded. As a possible right to inherit from him would depend on the law of the place where his estate is administered and as the proof shows him to be a citizen of the Dominican Republic and currently domiciled in Canada, and there being no proof of the laws of either of those countries, no such right was proved to be affected.

The second factor is the interest of New York. The preservation of the marriage state in the absence of reprehensible conduct is undoubtedly a part of our public policy. But whether that policy is better served by the preservation of defendant's first or second marriage would require the attention of a more able dialectician.

It appears by defendant's undenied admission that he and his first wife came here together prepared to get a divorce on the basis of her adultery (whether actual or staged does not appear) and were induced to go to Florida where grounds more conducive to the retention of public respect for the parties could be availed of. While he does not admit that he knew that this would necessarily involve perjury by his wife as to her domiciliary intentions and did involve perjury as to the length of her residence he is quite clear that the whole idea was mutual. While such a mockery of judicial function would certainly arouse the interest of this State if perpetrated on our courts and there is no doubt that if discovered we would have little difficulty in dealing with it, nevertheless, happening where it did it can not be said to require this State to grant an annulment.

So that were the two factors indicated the sole criteria of decision an opposite conclusion would be reached. They are not, however, understood as intended so to be.

Proof of a direct attack on the Florida divorce was given. This was in the form of an action brought in Florida by this plaintiff against this defendant and his former wife for a declaratory judgment declaring the invalidity of the divorce proceedings. It resulted in a dismissal of the complaint. Though currently on appeal it is treated as a final judgment. The basis of the decision is that despite the appearance of all parties the court lacked jurisdiction to grant the relief. This is not a decision on the merits. Had it been it would have been conclusive against plaintiff, as, having litigated the validity of the jurisdictional findings in Florida, she could not be heard here to question them again. This last-mentioned judgment supplied a necessary item of proof that does not otherwise appear in the case. It shows that defendant's first wife was alive at the time of his marriage to plaintiff. Judgment for plaintiff.

Submit findings and judgment accordingly.